## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM MATTHEWS,<br>    *Plaintiff*, | |
| v. | No. 3:22-cv-821 (JAM) |
| MAHBOOB ASHRAF *et al.*,<br>    *Defendants*. | |

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff William Matthews was incarcerated by the Connecticut Department of Correction. While there, he filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Matthews asserts claims for deliberate indifference to his serious medical needs.

### BACKGROUND

Matthews names three defendants: Dr. Mahboob Ashraf, Nurse Sheila Baudin, and Warden Zelynette Caron. All three are alleged to work at Carl Robinson Correctional Institution ("Robinson"). Matthews claims that, on July 12, 2021, while confined at Corrigan-Radgowski Correctional Center, he was diagnosed with sleep apnea.[1] On August 5, 2021, he was transferred to Robinson.[2] Matthews repeatedly complained about an inability to breathe and choking while sleeping.[3] At every visit, Dr. Ashraf told Matthews that he would be going to UConn for a sleep study "soon."[4]

On February 1, 2022, in response to his continued complaints of an inability to breathe while sleeping, Dr. Ashraf gave Matthews an Albuterol asthma pump.[5] The pump was

---

[1] Doc. #1 at 5 (¶ 1).
[2] *Ibid*. (¶ 2).
[3] *Ibid.*
[4] *Ibid.*
[5] *Ibid*. (¶ 3).

ineffective.[6]

On February 8, 2022, Matthews submitted a request to Dr. Ashraf stating that he was having serious breathing problems as well as choking and vomiting in his sleep.[7]

On March 14, 2022, Matthews submitted two requests, one to Dr. Ashraf and a second to Nurse Baudin.[8] Dr. Ashraf responded that he had directed Nurse Baudin to expedite Matthews's request.[9] Matthews had received the same response from Dr. Ashraf to his February request.[10] Matthews was added to the sleep-study waiting list, but Nurse Baudin informed him that even if he underwent a sleep study, there were no CPAP machines available and there were nine inmates on the waiting list for a CPAP machine, some since September 2021.[11] On March 16 and 17, 2022, Matthews wrote to Nurse Baudin complaining about an inability to breathe.[12] She referred Matthews to her prior response.[13]

On March 21, 2022, Matthews wrote to Warden Caron requesting a medical reintegration furlough in accordance with Administrative Directive 9.8(4)(C) to obtain medical services not otherwise available.[14] Matthews believed he qualified for the furlough because there were no CPAP machines, he was nearing discharge, he had no violence in his record, and his health was not good as he suffered from stage 3 chronic kidney disease and rheumatoid arthritis in his

---

[6] *Ibid.*
[7] *Ibid.* (¶ 4).
[8] *Id.* at 5–6 (¶ 5).
[9] *Id.* at 6 (¶ 5).
[10] *Ibid.*
[11] Doc. #1-1 at 2, 10. In his statement of facts, Matthews states that Nurse Baudin told him that he was scheduled first based on the information provided in his request. Doc. #1 at 6 (¶ 5). But Matthews relates only a portion of the sentence in the response. Nurse Baudin in fact stated, "There are 44 inmates waiting on a sleep study in the state. They only do a few at a time. None in almost 2 years during COVID. Central Office sends sleep study lab the list every couple of weeks, and the sleep lab decides *who is going to get scheduled 1st, based on info provided in the request.*" Doc. #1-1 at 2 (emphasis added).
[12] Doc. #1 at 6 (¶ 6).
[13] *Ibid.*
[14] *Ibid.* (¶ 7).

knees.[15] The warden's secretary responded that he needed a purpose for a medical furlough.[16]

On March 23, 2022, Correctional Officer Barnett advised Matthews to write to Deputy Warden Mangiafico for help.[17] Matthews stated in his request to Deputy Warden Mangiafico that he had sleep apnea, he was having serious difficulty breathing while sleeping, and on one night, a correctional officer had to wake him because she feared for his safety.[18] Again, he received a reply that he needed a medical purpose for a medical furlough.[19]

On March 28, 2022, Matthews went to UConn for treatment of his chronic kidney disease.[20] When he told the doctor he had sleep apnea, she told Matthews that the sleep apnea was causing his high blood pressure.[21] Matthews now takes hypertension medication daily.[22] Matthews alleges that he did not have kidney problems until he was diagnosed with sleep apnea and is unsure whether the doctor attributed his kidney disease to sleep apnea.[23]

On April 19, 2022, Matthews submitted a Health Services Administrative Remedy, a medical grievance.[24] The grievance was denied because Matthews did not properly complete the form, and he was told he could not appeal the denial.[25] In the grievance, Matthews referenced the lack of CPAP machines and responses he received from his requests to Nurse Baudin and Warden Caron.[26]

On January 1, 2022, Matthews was diagnosed with COVID-19 and was quarantined for a

---

[15] *Id.* at 7 (¶ 7).
[16] *Ibid.* Again, Matthews includes only part of the response. The response states that a medical purpose furlough and reintegration furlough are different and, if Matthews seeks a medical purpose furlough, the medical staff must advocate on his behalf. Doc. # 1-1 at 7.
[17] Doc. #1 at 7 (¶ 8).
[18] *Ibid.*
[19] *Id.* at 8 (¶ 8).
[20] *Ibid.* (¶ 9).
[21] *Ibid.*
[22] *Ibid.*
[23] *Ibid.*
[24] *Ibid.* (¶ 10).
[25] *Id.* at 8–9 (¶ 10).
[26] *Id.* at 9 (¶ 10).

few weeks.[27]

Matthews continued to submit requests for treatment.[28] On May 3, 2022, Matthews was called to the medical unit and told that, as he would be released in July, there was not enough time for him to receive medical treatment.[29] He was also told that he could not see a doctor because the waiting list was several months long.[30]

On May 7, 2022, Matthews submitted a request seeking pain medication for arthritis.[31] He previously received four different medications but had allergic reactions to three of the medications and the fourth provided no relief.[32] Matthews received responses that he was scheduled to be seen by the pain management provider, but this did not occur.[33]

Matthews commenced this section 1983 suit for damages on June 21, 2022.[34] He was released from prison in July 2022.[35]

DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments they suggest. *See Tracy*

---

[27] *Ibid.* (¶ 11).
[28] *Id.* at 9–10 (¶ 12).
[29] *Id.* at 10 (¶ 12).
[30] *Ibid.*
[31] *Id.* at 10–11 (¶ 13).
[32] *Id.* at 11 (¶ 13).
[33] *Ibid.*
[34] *Id.* at 12.
[35] Doc. #9.

*v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).[36]

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### Deliberate indifference to serious medical needs

Matthews asserts several claims for deliberate indifference to medical needs. The Eighth Amendment to the U.S. Constitution protects sentenced prisoners against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Court therefore considers his claims under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of sentenced prisoners are considered under the Eighth Amendment); *Johnson v. Cook*, 2021 WL 2741723, at *12 (D. Conn. 2021) (considering a claim of deliberate indifference to medical needs brought by a since-released prisoner under the Eighth Amendment).

First, an inmate must show that his medical need was "sufficiently serious." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). A medical condition may not initially be serious, but may become serious because it is degenerative and, if

---

[36] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

5

left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Matthews alleges that he suffers from sleep apnea. Courts considering this condition have held that sleep apnea may constitute a serious medical need. *See, e.g., Jumpp v. Simonow*, 2020 WL 5659103, at *4 (D. Conn. 2020); *Perez v. Semple*, 2018 WL 6435651, at *2 (D. Conn. 2018). Matthews alleges that his sleep apnea caused him to choke and vomit while sleeping and caused him to experience high blood pressure. He also alleges that he suffers constant pain from arthritis. For purposes of initial review, the Court therefore assumes that Matthews had objectively serious medical needs.

Matthews also must show that the defendants were deliberately indifferent to his serious medical needs. "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone v. N.Y. St. Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). The defendants must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate

harm will result."). "Mere negligence" is insufficient to state a claim for deliberate indifference. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

### *Sleep study and CPAP machine*

Matthews argues that defendants Ashraf and Baudin were deliberately indifferent by failing to schedule a sleep study to determine whether he requires a CPAP machine to treat his sleep apnea. He submits evidence, however, showing that these defendants do not themselves schedule the sleep studies. They forward names of inmates who require sleep studies to the sleep lab at UConn every few weeks and the lab determines the order of treatment and schedules the appointments.[37] Because neither defendant schedules the appointments or determines the order in which inmates on the list are seen, they were not deliberately indifferent for failing to obtain the sleep study for Matthews. *See Hernandez v. Keane*, 341 F.3d 137, 146 (2d Cir. 2003) (finding no deliberate indifference where "most of th[e] delay [in receiving surgery] was caused by factors outside defendants' control"). Matthews's deliberate indifference claim relating to the sleep study is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Matthews's complaint may also be construed to assert a claim for denial of a CPAP machine. But Dr. Ashraf informed him that a CPAP machine cannot be issued before a sleep study shows that a CPAP machine is required.[38] Because the record does not indicate that a sleep study had been performed, any claim regarding provision of a CPAP machine is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Matthews alleges that, more recently, he was told that he would receive no treatment for sleep apnea as he was nearing his discharge date.[39] Matthews does not allege that defendants

---

[37] Doc. #1-1 at 2.
[38] *Id.* at 1.
[39] Doc. #1 at 9–10 (¶ 12).

7

Ashraf or Baudin gave him this information. To state a cognizable section 1983 claim for

damages, a plaintiff must allege facts showing the defendant's personal involvement in the

alleged constitutional deprivation. *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013). Because Matthews has not alleged facts showing the personal involvement of defendants

Ashraf and Baudin, the claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Arthritis medication*

Matthews includes a claim that he was denied a fifth medication to treat his arthritis pain

and denied a doctor visit.[40] Again, Matthews does not allege facts showing the personal

involvement of defendants Ashraf and Baudin. Although he alleges that he submitted an Inmate

Request to Dr. Ashraf, the copy of the request submitted with the complaint shows that the

request was answered by another medical provider who is not a defendant.[41] Because Matthews

has not alleged facts showing the personal involvement of defendants Ashraf and Baudin—or

indeed, that they even knew of his requests for treatment—the claim against them is dismissed

pursuant to 28 U.S.C. § 1915A(b)(1).

### *Medical furlough*

Finally, Matthews contends that Warden Caron denied him a medical furlough. Warden

Caron is a supervisory official. There are no longer any special rules for demonstrating the

personal involvement of a supervisory official. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d

Cir. 2020). A plaintiff "must plead and prove 'that each Government-official defendant, through

the official's own individual actions, has violated the Constitution.'" *Id.* at 612 (quoting *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 676 (2009)). Although Matthews submitted a request to Warden Caron, a

---

[40] *Id.* at 10–11 (¶ 13).
[41] Doc. #1-1 at 13.

different individual responded to the request.[42] It is not clear that Warden Caron was even aware of Matthews's request for a medical furlough. Merely sending a letter to a supervisor, even if the letter was received, is insufficient to demonstrate personal involvement. *See Brown v. Hannah*, 2022 WL 487989, at *4 (D. Conn. 2022); *Durham v. Doe*, 2019 WL 764741, at *3 (D. Conn. 2019). The claim against Warden Caron is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## CONCLUSION

For the reasons stated above the Court DISMISSES the complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The Clerk of Court shall close this case. Matthews may file an amended complaint if he can correct the deficiencies identified above. Any amended complaint must be filed within thirty days from the date of this order.

It is so ordered.

Dated at New Haven this 5th day of October 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[42] *Id.* at 6.